[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO DISSOLVE TEMPORARY INJUNCTION
This motion was brought by the defendants to dissolve an ex parte temporary injunction issued on October 4, 1990. That injunction commanded and enjoined defendants "to wholly and absolutely desist and refrain from continuing to conduct a regulated activity at the subject property in violation of the Connecticut General Statutes, the Bethany Inland Wetlands 
Watercourses Regulations, and the Plaintiff's Cease Restore Order. . . ." Based on the credible evidence presented at the hearing on this motion, the court finds the following material facts established:
On November 1, 1989, in Application #360, the defendant Scarveles, applied for a permit from the Bethany Inland Wetlands 
Watercourses Commission to conduct regulated activities as CT Page 3263 follows: Regrade, restore east end of pond — Phase III .79 acres (3/4 acre) Map — Final Grading Plan Bethany West Lake."
On January 25, 1990, that permit was denied by the Commission, which required the defendant to do as follows:
 "[R]estore all areas east of the line established under permit #358 (which is 600' (six hundred feet) easterly of the spillway), as nearly as possible to the original countours in that area allowed under permit #199. This does not require reconstruction of the small former ponds in said area. Prior to the commencement of the required restoration work, sediment and erosion controls shall be installed where necessary and inspected and approved by the Commission."
The denial of Application # 360 and the accompanying restoration order were not appealed.
Based on a site inspection conducted on July 28, 1990, the Commission determined that the defendants had excavated in and filled portions of the east end of the pond — the area specifically addressed in the restoration order. That activity involved work for which permission had been sought by defendant Scarveles in Application #360. As of July 28, 1990, all of the Bethany permits held by Scarveles had expired or were the subject of pending litigation.
On July 31, 1990, the Commission issued a Cease and Restore Order to the defendants directed at their filling, grading and disturbing of wetlands on the premises as observed by the Commission members during the July 28, 1990 inspection.
The order stated the following:
 The work proposed in application #360 has been performed in spite of the application having been denied. The stipulations noted in the notice of denial have been ignored.
 Other violations include non maintenance of sediment and erosion controls, pumping silt laden water into a wetland, creating stockpiles in an area to be cleared and seeded, resulting in additional runoff of pollutants into a wetland.
Defendants were ordered as follows:
"[Y]ou are hereby ordered to CT Page 3264
 1.) Cease any and all activity within the perimeter of the pond except for that work necessary to restore the grades and wetlands in the area stipulated in the denial of your application #360 and:
 2.) Cease the removal of any materials stockpiled on the site until the restoration work has been completed and so certified in writing by the Commission;
 3.) Submit an application to the Commission for a permit to do the additional grading, etc, necessary to complete the project and have a permit issued for said work."
A show cause hearing concerning the Cease and Restore Order was held before the Commission on August 7, 1990. At the hearing, the defendant Scarveles disputed the Cease and Restore Order claiming that he had already complied with parts 1 and 2 of the Order. He requested, and the Commission agreed, to re-inspect the property. The hearing was continued to August 20, 1990.
The Commission inspected the property on August 10, 1990 The following members of the Commission were present in addition to Mr. Scarveles: Dorothy Parker, John Garcia, Chairman Eric Stone, and Andrew Levetin, a proposed but not official member of the Commission. The Commission members concluded from that inspection that no work had been undertaken to comply with the order. Based on independent site viewings, Commissioner members Civitello and Evans concurred with that conclusion.
On August 20, 1990, the Commission, after reconvening the hearing, ordered the Cease and Restore Order to continue and ordered defendant to submit a new application explaining the work to be done to comply with the order. On September 11, 1990, the Bethany Town Clerk was served with a copy of an administrative appeal of the Commission's action in continuing the Cease and Restore Order. That appeal is pending in this court as Scarveles, Trustee v. Inland Wetlands Commission of the Town of Bethany, No. CV 90 0304925S.
On October 1, 1990, Commission Chairman Eric Stone received a complaint that, despite the existence of the Cease and Restore Order, defendants were conducting grading activities at the site and were hauling material off site. On October 2, 1990, Mr. Stone, on a site visit, observed a bulldozer and backhoe removing material from the southwestern slope of the pond. The material was being placed in dump trucks which left the site and headed CT Page 3265 west toward Beacon Falls. The excavation was occurring approximately ten feet from the water of the pond.
When Commissioner Stone reminded Mr. Scarveles that he did not have a local wetlands permit authorizing that work, Mr. Scarveles stated his intention to continue working because a State Department of Environmental Protection (DEP) Water Diversion Permit authorized his activities there. On or about September 14, 1990, defendant Scarveles had obtained a DEP Divers permit on which allowed grading and filling at the property. However, Mr. Scarveles had been informed, by letter of the DEP Inland Water Resources Division, that the Diversion Permit did not obviate the need to obtain local wetlands permits prior to conducting regulated activities at the site.
The continuing violations and unauthorized work at the site have adversely affected the fragile wetlands and watercourses in that area and downstream. The work has also threatened to exacerbate the erosion and sedimentation which have already occurred in the pond and downstream.
Prior to July 31, 1990, the defendant, Scarveles, had applied for and obtained various other permits for excavation work at the Simpsons Pond site from both the DEP and the Town of Bethany. All prior Bethany permits had expired, however, by November 1, 1989. Scarveles had obtained a DEP permit on July 23, 1990 for dam construction and a DEP permit, on September 14, 1990, for diversion of water.
STANDARD FOR ISSUANCE: OF A TEMPORARY INJUNCTION
Section 22a-44 (b) of Conn. Gen. Stat. provides as follows:
 "The superior court, in an action brought by the commissioner, municipality, district or any person shall have jurisdiction to restrain a continuing violation of said sections, to issue orders directing that the violation be corrected or removed and to assess civil penalties pursuant to this section."
In order to obtain a temporary injunction, the Commission must establish that the defendants' activities at the site violated the wetlands statutes, local regulations, or a condition of an order by the Commission. Conservation Commission v. Price,193 Conn. 414, 428-430 (1984). The Commission need not establish the usual elements of temporary injunctive relief, namely, irreparable injury, lack of an adequate remedy at law and likelihood of success on the merits. Id; see also Zoning Commission v. Leninski, 34 Conn. Sup. 66, 70 (1976). CT Page 3266
In discussing the burden of proof to be met by a Commission seeking an injunction, the Connecticut Supreme Court has stated as follows:
 "The rationale underlying [the] rule that the complainant is relieved of his burden of proving irreparable harm and no adequate remedy at law is that the enactment of the statute by implication assumes that no adequate alternative remedy exists and that the injury was irreparable, that is, the legislation was needed or else it would not have been enacted." Crabtree v. Van Hise, 39 Conn. Sup. 334, 338, 464 A.2d 865 (1983).
 Further, "[i]t is the court's duty to carry out the intention of the legislature as expressed in the statute it has enacted and make the remedy it has provided an effective and efficient means of dealing with violations of the act and the regulations properly promulgated under its authority. See Water Resources Commission v. Connecticut Sand and Stone Corporation, [170 Conn. 27, 34 (1975)]"
Conservation Commission v. Price, supra at pp. 429-430.
In granting a temporary injunction, the court acts "to maintain the status quo, pending a final determination on the merits." Gerdis v. Bloethe, 39 Conn. Sup. 53, 55 (1983).
 THE MOTION TO DISSOLVE TEMPORARY INJUNCTION BY DEFENDANT SCARVELES
The temporary injunction issued ex parte by Judge Fracasse orders the defendants as follows:
 "[t]o wholly and absolutely desist and refrain from continuing to conduct a regulated activity at the subject property in violation of the Connecticut General Statutes, the Bethany Inland Wetland and Watercourses Regulations, and the Plaintiff's Cease and Restore Order [dated July 31, 1990] until the return day of the Writ and Complaint and until further order of this Court."
Based on the findings of the court, it is apparent that the injunction was properly issued and should not be dissolved. On November 1, 1989 the defendant Scarveles had applied for a permit to conduct regulated activities at the site. The application was CT Page 3267 denied and a restoration order issued.
Despite the denial and restoration order, the defendants proceeded to work at the east end of the site, at some time in the period from January 25, 1990 to July 28, 1990 — without a wetlands permit. A Cease and Restore Order was issued with regard to those unauthorized activities. Although the defendant Scarveles appealed the Cease and Restore Order, no judicial order has been issued staying the Commission's enforcement activities with regard to the Cease and Restore Order. In that regard, 22a-43 (a) of the Conn. Gen. Stat. provides that, unless a party seeks an order from the court staying a Commission's enforcement proceedings, those proceedings are not stayed merely by taking an administrative appeal.
On October 2, 1990, Commissioner Stone determined, by personal observation, that unauthorized work had commenced at the site within ten feet of the watercourse.
At the time the ex parte injunction issued, there was pending litigation between the parties in the Superior Court, Judicial District of New Haven at Meriden, in October 1991. A decision on the merits of that appeal was issued after the ex parte order, on February 8, 1991.
In his motion to dissolve the temporary injunction, the defendant Scarveles raises eight grounds. The first three concern the claim that the verified complaint supporting plaintiff's Application for Temporary Injunction was incomplete and inaccurate: (1) in failing to mention the Meriden appeal, involving Wetlands Permit # 199; (2) in failing to advise the court that "the restoration activity ordered is in direct conflict with the DEP permitted activity; (3) in failing to disclose that the area in which the defendant was working was different from the restoration area.
As to the first ground, the court notes that the existence of the Meriden appeal is fully described in the plaintiff's amended complaint. Moreover, the court agrees with the plaintiff that the existence of the Meriden appeal, calling into question as it did defendant Scarveles' rights and obligations under Permit # 199, in all likelihood, would have provided further support for the issuance of the ex parte in junction had the details been disclosed to the issuing judge. The decision in the Meriden case was filed after the ex parte temporary injunction was issued. There is no basis on which the failure to disclose the Meriden appeal should invalidate the ex parte injunction.
Second, defendant alleges that plaintiff failed to advise the court that "the restoration activity ordered is in direct CT Page 3268 conflict with the activity permitted to the defendant by the Department of Environmental Protection." It is noted that in the complaint (and the Amended Complaint), plaintiff Commission did advise the court that defendant Scarveles relied on a DEP Diversion Permit as authorizing his October, 1990 activities at the site.
The complaint further alleges that the defendant was advised in writing by Thomas Morrissey, Director of the DEP Inland Water Resources Division, that the DEP permit — absent a local wetlands permit — did not authorize the defendant to undertake regulated activities at the site. There is no merit to this ground asserted by defendant Scarveles.
The third deficiency alleged, namely, that the complaint failed to disclose that the area in which defendant was working without a wetlands permit differed from the restoration area. In Paragraph 11 of the complaint (Paragraph 11 of the Amended I Complaint), the restoration area is noted as all areas east of the 600' line established pursuant to Permit #358, while Paragraph 25 of the Complaint (Paragraph 29 of the Amended Complaint) refers to working the south slope of the pond.
It is further noted that the Cease and Restore Order required defendants to obtain a permit "to do the additional grading, etc. necessary to complete the project." Thus, the grading and removal work at the site, without a permit, violated the Commission's order.
The defendant Scarveles has raised five additional grounds for dissolving the temporary injunction: (1) he was acting in good faith on October 4, 1990 in conducting his activities on the site; (2) administrative permits issued by the Bethany Planning Zoning Commission permitted his work at the site; (3) the area in question was not a "wetland"; (4) the material being removed did not possess wetland characteristics; and (5) the terms of the restoration orders are ambiguous and uncertain and, therefore, invalid.
As to the claim that the defendant was conducting activities on the site, "in good faith," in October, 1990, the defendant claimed that his activities were permitted by his DEP permits. It is clear, however, that prior to defendants' work at the site the DEP correctly advised Mr. Scarveles that he was required t have a local, as well as a DEP, permit prior to commencing work al the site. The law requires that no activities can occur unless the activities are permitted by both the DEP and the local Commission. Further, as the plaintiff correctly notes, the evidence presented at the hearing indicated that defendants word: at the site in October, 1990 contravened the terms of the DEP CT Page 3269 permits in that work began at the site prior to notifying the DEP of the intent to do so.
It is noted that the temporary injunction does not prevent the defendant from work at the dam on his property as permitted by the DEP, Dam Safety and Water Resources Unit, as the DEP has exclusive jurisdiction over Dam Safety Permits.
The defendant next claims that administrative permits issued by the Bethany Planning and Zoning Commission (dated January 16, 1990 and July 16, 1990) permitted earth removal, filling and grading at the site. However, those administrative review permits authorized work only at the north slope of the pond while defendants were working the southwest slope on October 1 and 2, 1990. Further, the defendants had no wetlands permit on October 1 and 2, 1990, which was required as a prerequisite to issuance of the administrative review permits.
Defendant alleges also that his activities were not being conducted in an area which was a "wetland." As to this claim, it is clear that the State and local wetland statutes and regulations encompass not only wetlands but also watercourses. Conn. Gen. Stat. 22a-38 (13) ("Regulated Activity"); Bethany Inland Wetlands Regulations, Section 2.1(u) ("Regulated Activity"). Watercourses are defined to include ponds and brooks. Connecticut General Statutes, 22a-38 (16) Bethany Inland Wetlands Regulation, Section 2.1 (ee). The evidence presented to the court established that the defendants' activities on October 1 and 2, 1990 were threatening the pond and brook at the site, both of which are watercourses.
As plaintiff points out, the Connecticut Supreme Court has recently stated, "the term `regulated activity' in 22a-42a(c) [is interpreted] as encompassing not only activity that occurs within wetlands, but also in some instances, activity that occurs in nonwetlands areas, yet effects wetlands." Mario v. Fairfield,217 Conn. 164, 170 (1991).
Because the defendants were involved in excavating, digging and bulldozing material, including sand and gravel, which disturbed the natural and indigenous character of the watercourse, that activity does not fall within the statutory exemption of Conn. Gen. Stat. 22a-40 (b)(2) as claimed by the defendant, Scarveles.
The plaintiff's own regulations address this exemption as well and limit it to recreational use of property, which is not involved in this case. Further, those regulations specifically require that a person seeking to conduct what is claimed to be a nonregulated activity must apply for a determination by the Wetlands Commission that the proposed activity is indeed a CT Page 3270 nonregulated activity. Bethany Inland Wetland Regulations, Section 4.4.
The defendant argues that the material being removed did not possess wetland characteristics. It was established, however, that the defendants were conducting regulated activities without wetland permits. As our Supreme Court noted in Mario, work in nonwetland areas which may have an impact on wetlands and watercourses, as in this case, may be regulated by a local Commission.
Whether the water in the pond reached the top of the slope where the October work was being conducted, does not alter that fact that the pond site in question is a watercourse. Under the Commission's regulations, "watercourse," is defined to include even "vernal or intermittent" bodies of water. Bethany Inland Wetland Regulations, Section 2.1 (ee). It is clear that a watercourse can even be dry at times without changing its basic nature.
Defendant further argues that there was no threat of irreparable loss and damage to fragile wetlands. The credible evidence established that defendants' activities at the site did pose a significant threat to the pond and to the downstream wetlands and watercourses. Furthermore, defendants' grading of wetland areas at the eastern end of the pond and beyond destroyed wetlands.
The plaintiff sought to restrain all of defendants' unauthorized activities at the site. The Commission was authorized to seek injunctive relief from the Superior Court. Conn. Gen. Stat. 22a-44 (b). As noted above, the Commission need not establish irreparable injury in order to obtain the temporary injunction since the statute presumes irreparable injury and lack of adequate remedy at law. See Conservation Commission v. Price,193 Conn. 414, 428-430 (1984).
Finally, the defendant Scarveles contends that the terms of the restoration orders are ambiguous and uncertain and, thus, are not valid. The court is not persuaded by this contention. Exhibit 19, a map entitled "Topographic Map of Bethany Recreation Park, Inc. Bethany, Conn." Scale 1"=100', dated March 19, 1984, submitted by Mr. Scarveles with an earlier application, contained the contours referred to by the Commission in its restoration orders. In addition, the evidence established that the contours could be ascertained, as well, by examining a topographic map or a geodetic survey map from the time period in question. It is significant that Mr. Scarveles' soil expert, George Logan, apparently understood the parameters of the restoration order. CT Page 3271
The violations established by the evidence, including excavation of wetlands and deterioration of erosion and sedimentation controls, provide a basis for the court to issue and maintain the temporary injunction to restrain any violation of the Wetlands Act and to maintain the status quo pending judicial resolution of the issues on their merits. Conn. Gen. Stat. 22a-44
(b). See Conservation Commission v. Price, supra and Gerdis, supra. The court concludes that the motion to dissolve of the defendant Saralee cannot prevail in view of the evidence supporting the issuance and maintenance of the temporary injunction.
 THE MOTION TO DISSOLVE OF DEFENDANT NORTHFORD TRUCKING AND EXCAVATING, INC.
The essential claim in the Motion to Dissolve raised by the defendant Northford Trucking and Excavating, Inc. is that it was "merely a hauler for hire, has no interest in the land in question, and has not control over the activities being conducted thereon." The short answer is that Section 22a-44 of the Conn. Gen. Statutes does not limit liability for violations of the Wetlands Act or local regulations to owners of property.
The statute refers to "any person . . . conducting or maintaining any activity, facility or condition which is in violation . . ." (22a-44 (a)) as being a proper subject of a cease and desist order. See also Bethany Inland Wetlands Regulations, Section 13 "Enforcement." Furthermore, Conn. Gen. Stat. 22a-44
(b) makes any person liable for civil penalties if found to have committed, taken part in, or assisted in a violation of the State statutes or local regulations. Conn. Gen. Stat. 22a-44 (c), which addresses liability for criminal penalties, states that "`person' shall be construed to include any responsible corporate officer." Id. Section 22a-38 (2) also defines "person" as "any person, firm partnership, association, corporation, company, organization or legal entity of any kind. . . ." Id.
In view of the broad language of the statute and the Bethany regulations, the defendant Northford Trucking was a proper object of the Cease and Restore Order and of this enforcement action which seeks to obtain compliance with the statutes and the regulations. The court takes note of the evidence that this defendant would work the site again if requested to do so by Mr. Scarveles, but for the injunction. The temporary injunction properly issued against Northford Trucking to prevent resumption of unauthorized activities.
The court notes the broad legislative goals underlying the State Wetlands and Watercourses act. Conn. Gen. Stat. 22a-36
reads, in pertinent part: CT Page 3272
 "The inland wetlands and watercourses of the state of Connecticut are an indispensable and irreplaceable but fragile natural resource with which the citizens of the State have been endowed.
* * *
 The preservation and protection of the wetlands and watercourses from random, unnecessary, undesirable and unregulated uses, disturbance or destruction is in the public interest and is essential to the health, welfare and safety of the citizens of the state. It is, therefore, the purpose of sections 22a-36 to 22a-45, inclusive, to protect the citizens of the state by making provisions for the protection, preservation, maintenance and use of the inland wetlands and watercourses by minimizing their disturbance and pollution; . . . [and] preventing damage from erosion, turbidity or situation ; . . . by providing an orderly process to balance the need for the economic growth of the state and the use of its land with the need to protect its environment and ecology in order to forever guarantee to the people of the state, the safety of such natural resources for their benefit and enjoyment and for the benefit and enjoyment of generations yet unborn."
The pendency of defendant Scarveles' application for a local permit and the administrative appeal do not provide a reason for dissolving the injunction. To the contrary, there is urgent need to maintain the status quo pending a resolution of all issues in this case.
The remedy sought by the Commission is the maintenance of the temporary injunction. The language of that injunction is sufficiently clear and unambiguous. The defendants are ordered as follows:
 "[T]o wholly and absolutely desist and refrain from continuing to conduct regulated activities at the subject property in violation of the Connecticut General Statutes, the Bethany Inland Wetlands and Watercourses Regulation, and the Plaintiff's Cease and Restore Order [dated July 31, 1990] until the return day of the Writ and Complaint and until further order of this Court."
Defendants must not conduct regulated activities in violation of the Connecticut General Statutes, the Commission's regulations, or the Cease and Restore Order. In plain terms, that means that defendants must obtain a permit from the Commission before conducting regulated activities at the site.
Further, the Commission seeks to require the defendants to comply with the outstanding restoration orders (by appropriate application) because the wetlands and watercourses at the east end of the pond have been disturbed and partially destroyed by defendants' actions. If restoration of the property involves regulated activities, a permit is required to undertake that activity.
For the foregoing reasons, the Motions to Dissolve are denied and all terms and conditions of the temporary injunction issued on October 4, 1990 are continued in effect until further order of the court.
Barry R. Schaller, Judge. CT Page 3273